# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAE L. SIMMONS, Supervised Administrator of the Estate of Archie Pryor-Newson, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 07 C 4209 ) |
| YOUNG LIFE, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This is a personal injury / wrongful death case arising from fatal injuries that Archie Pryor-Newson suffered while attending a camp operated by defendant Young Life, a not-for-profit corporation. Rae Simmons, the administrator of Pryor-Newson's estate, filed the case in the Circuit Court of Cook County, Illinois. Young Life removed the case to federal court based on diversity of citizenship.

Young Life has moved for summary judgment based on a release that Pryor-Newson's mother, Shawna Pryor, signed before he attended the camp and allegedly as a condition of his attendance. Pryor-Newson was a minor. Simmons raises various issues regarding the circumstances under which Pryor signed the release, as well as its construction, but for present purposes the Court will bypass those issues to get to the primary issue raised by Young Life's motion.

The only Illinois authorities on point hold that a parent may not release a child's

cause of action.  This is the rule in Illinois whether the release is executed after the child's injury, *see Mastroianni v. Curtis*, 78 Ill. App. 3d 97, 100, 397 N.E.2d 56, 58-59 (1979), or, as in this case, prior to the injury.  *See Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 146-47, 634 N.E.2d 411, 414-15 (1994).  Although there is no decision from the Illinois Supreme Court on point, this Court has no basis to believe that court would rule differently from the way the Second District of the Illinois Appellate Court ruled in *Meyer*.  As plaintiff points out, the Illinois Supreme Court long ago made it clear that the rights of minors are to be guarded carefully.  *See Muscarello v. Peterson*, 20 Ill. 2d 548, 555, 170 N.E.2d 564, 569 (1960).

Young Life argues that an exception to the general rule should be carved out for non-for-profit agencies like Young Life.  The Court notes as an aside that if defendant wanted a court to create a new rule of Illinois law, it should have considered defending the case in state court rather than removing it.  Federal courts applying state law engage in a predictive function; they do not blaze trails.  Were it the plaintiff who had filed a diversity case here seeking a new rule of state law, the Court would be authorized to dismiss the case for that reason.  *See, e.g., Insolia v. Philip Morris, Inc.*, 216 F.3d 695, 607 (7th Cir. 2000).  The Court raised this point when Young Life filed its motion, questioning whether the Court should consider remanding the case to state court.  But the *Insolia* doctrine appears to be discretionary, and Young Life insists in its reply brief on its entitlement to a federal forum.  So the Court will press ahead.

In any event, Young Life is unable to muster any support for its contention that an Illinois court would recognize the exception it proposes.  The only cases it cites have

2

nothing to do with releases; rather they concern, broadly speaking, the circumstances under which not-for-profit organizations owe a duty that may give rise to a tort action. In *Loosier v. Youth Baseball and Softball, Inc.*, 142 Ill. App. 3d 313, 491 N.E.2d 933 (1986), the court ruled that a youth baseball organization had no legal duty to provide supervision for youngsters who were out selling raffle tickets, because this was not one of the activities for which children were "entrusted by their parents to their [baseball] coaches." *Id.* at 318, 491 N.E.2d at 937. Rather, the court noted, the parents still had the care and control of their child while he was selling the raffle tickets. *Id.* In *Cnota v. Palatine Area Football Ass'n*, 227 Ill. App. 3d 640, 592 N.E.2d 196 (2002), a waitress at a pizza party held by a team that played in a league run by the defendant, a youth sports organization, was injured when she tripped over coats that team members team and their families had left on the restaurant floor. The court ruled that the organization was not responsible for the alleged negligence of the team's coach and a volunteer assistant in overseeing the event, largely because the organization had not sponsored the party and had provided no funds that were used to hold the party. *See id.* at 649-51, 592 N.E.2d at 202-03. The court also noted, citing *Loosier*, that "[t]o the extent that public policy enters into the analysis," it does not require persons doing volunteer work for non-profit youth sports organizations to provide continuous protection for youths participating in the programs, as this would impose an unreasonable burden. *See id.* at 653, 592 N.E.2d at 204.

*Loosier* and *Cnota* do not assist Young Life in this case. Neither case has anything to do with the enforceability of a parent's release of a minor's claims. Nor

does either case suggest a general rule that non-profit groups like Young Life are subject to a different set of rules than other types of organizations, at least with regard to the enforceability of releases. The Court also notes that in contrast to the situations at issue in *Loosier* and *Cnota*, Pryor-Newson was, at the time of his fatal injury, away from home at a camp run by Young Life and thus beyond the supervision and control of his parents; indeed, at the time of his fatal injury, he was engaged in a camp activity directly under the supervision of Young Life personnel.

Finally, the Court acknowledges Young Life's argument that the rule it proposes appears to exist in some states. As discussed above, however, Young Life has failed to show that Illinois would carve out a similar exception. Indeed, at least one of the cases cited by the Appellate Court in *Meyer* for the ineffectiveness of a parent's pre-injury release of a minor's claims involved a private college, likely a non-profit institution, *see Meyer*, 262 Ill. App. 3d at 146, 634 N.E.2d at 414 (citing *Doyle v. Bowdoin College*, 403 A.2d 1206 (Me. 1979)). In addition, the court in *Meyer* considered and rejected (albeit for a different purpose) the very case upon which Young Life relies most heavily, *Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559, 274 Cal. Rptr. 647 (1990). *See Meyer*, 262 Ill. App. 3d at 147, 634 N.E.2d at 415.[1]

## Conclusion

The Court denies defendant's motion for summary judgment for the reasons

---

[1] It also appears, based on another California case that Young Life cites, that California does not follow the same general rule as Illinois regarding a parent's ability to release a child's claims. *See Aaris v. Law Virgenes Unified Sch. Dist.*, 64 Cal. App. 4th 1112, 1120, 75 Cal. Rptr. 801 (1998) (stating that "It is well established that a parent may execute a release on behalf of his or her child.").

4

stated above [docket no. 39]. Because defendant's motion to bar plaintiff's expert is actually a motion *in limine*, the Court will treat it as such and will rule on that motion at or before the pretrial conference.

```
                                        _____
                                              MATTHEW F. KENNELLY
                                            United States District Judge
```

Date: August 20, 2008